UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff/Defendant-in-Counterclaim, | * | |
| | * | |
| v. | * | Civil Action No. 18-cv-11025-IT |
| | * | |
| TMC 100 ELM, LLC, | * | |
| | * | |
| Defendant/Plaintiff-in-Counterclaim. | * | |

MEMORANDUM & ORDER
August 13, 2019

TALWANI, D.J.

I. Introduction

Before the court is Plaintiff and Defendant-in-Counterclaim United States of America's Motion to Dismiss [#40] Defendant and Plaintiff-in-Counterclaim TMC 100 Elm, LLC's ("TMC") Counterclaim [#27]. The United States moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted. For reasons set forth below, the Motion to Dismiss [#40] is GRANTED.

II. Background

A. *The United States' Complaint and this Court's Orders*

The dispute before the court relates to the Environmental Protection Agency's ("the EPA") efforts to access TMC's property, as part of the EPA's remediation of the Blackburn and Union Privileges Superfund Site ("Superfund Site"). According to the Complaint [#1], the Superfund Site comprises approximately twenty-two acres in Walpole, Norfolk County, Massachusetts. In 1994, the EPA identified the Superfund Site as an area that required remediation, and in 2010, entered into a Consent Decree with BIM Investment Corporation, the Shaffer Realty Nominee Trust, Tyco Healthcare Group (now Covidien LP), and W.R. Grace and

1

Co. (collectively, the "Performing Parties"). Compl. ¶¶ 17-21 [#1]. The Consent Decree required the Performing Parties to remediate the Superfund Site, including excavating, dredging, and disposing of contaminated soil and sediment. Id. ¶ 21.

According to the Complaint [#1], to complete remediation of an area of the Superfund Site surrounding Lewis Pond, the Performing Parties required access to twenty-three separate parcels, owned or controlled by twenty owners. Id. ¶ 23. TMC owns several of the parcels at issue ("TMC Property"), including property currently in use as a parking lot ("West Street Parking Lot"). Id. ¶¶ 25-27.

After challenges coordinating access to the TMC Property, the EPA issued an Administrative Access Order in April 2018, which became effective on May 8, 2018. Id. ¶¶ 32-33; Motion for Order in Aid of Immediate Access to the Property of TMC, Ex. 1 ("Administrative Access Order") [#4-2]. When TMC refused to provide access to its property despite the Administrative Access Order, the United States filed the Complaint [#1] pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601-75 ("CERCLA"), as amended by 42 U.S.C. § 9604(e).

The United States subsequently sought an Order in Aid of Immediate Access [#4] and on June 12, 2018, the court granted the Order in Aid of Immediate Access [#4], which authorized access of the Property to the EPA for a period of 14 months. See June 12, 2018, Order [#10] (granting the EPA access to the West Street Parking Lot).[1]

---

[1] The United States also sought, and was granted, an Order in Aid of Immediate Access for another parcel of TMC's Property known as the Elm Street Parking Lot. See July 12, 2018, Order [#26] (granting the EPA access to the Elm Street Parking Lot). That Order is not the subject of the present dispute.

B.  *TMC's Counterclaim*

In October 2018, TMC filed its Answer, Affirmative Defenses, and Counterclaim ("Counterclaim") [#27]. As grounds for its counterclaim, TMC alleges that the June 12 Order [#10] and the EPA's restrictions of TMC's access put TMC in a potential breach of its obligations to a purchaser of the parking lot, and that TMC's potential breach could be avoided by lifting or modifying the Order [#10]. Countercl. ¶¶ 6-7 [#27]. TMC also asserts that representatives of the Performing Parties informed TMC that TMC could not complete its work on 58 parking spaces that TMC reserved for its tenants, even though the EPA did not seek access to these 58 spots, and that TMC's proposed work does not interfere with remediation. Id. ¶ 9. TMC's counterclaim asks the court: (1) to reduce the 14-month remediation period, and to declare that the court has the power to "consider the circumstances of this case, the public interest, and the relative harm to TMC . . . and/or to qualify or revise any access order"; (2) for a declaration that completion of TMC's planned construction in the West Street Parking Lot by July 16, 2018, did not and does not interfere with access to the Property; and (3) for a declaration that TMC's use of 58 parking spaces on a portion of the West Street Parking Lot that is not covered by the court's access order does not interfere with access to the Property. Countercl. at 11-12 (paragraphs 1-2(a)-(c)) [#27].

The United States filed a Motion to Dismiss [#40] TMC's counterclaim, asserting that TMC failed to establish subject matter jurisdiction, and, in the alternative, that TMC fails to state a claim. The United States further argues that CERCLA § 113(h) expressly prohibits the court from exercising jurisdiction over this counterclaim. Pl. Mem. in Support of Mot. to Dismiss Countercl. ("Pl. Mem.") [#41]. TMC asserts that the court has jurisdiction to enter declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that "CERCLA § 104(e)(5)

. . . specifically permits and requires the Court to consider the circumstances of this case in connection with any order entered by the Court allowing TMC to allow access to its property," and that its "narrow request" for relief is a compulsory counterclaim, over which this court has jurisdiction. Def. Opp. to Pl. Mot. to Dismiss Countercl. ("Def. Opp.") [#47]; Countercl. ¶ 3 [#27].

III.  Discussion

    A.  The Court's Jurisdiction in this Matter is Limited to Relief Available Under 42 U.S.C. § 9604(e)(5) and Does Not Extend to TMC's Counterclaims

TMC argues that the court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. This statute does not supply the needed jurisdiction, as "[f]ederal jurisdiction does not lie simply because relief is requested under the federal Declaratory Judgment Act." Colonial Penn Grp., Inc. v. Colonial Deposit Co., 834 F.2d 229, 232 (1st Cir. 1987).

As an additional basis for jurisdiction, TMC argues that CERCLA § 104(e)(5), 42 U.S.C. § 9604(e)(5), the provision under which the United States brought this action, authorizes the court to consider its counterclaim in "connection with any order entered by the Court requiring TMC to allow access to its property." Countercl. ¶ 3 [#27]. The United States argues that CERCLA § 104(e)(5) confers jurisdiction only for the limited purpose of allowing the EPA to request an order for compliance with its administrative order, and that TMC's counterclaims are barred by CERCLA § 113(h), 42 U.S.C. § 9613(h).

Under CERCLA, the President, acting through the EPA or other designees, may remove or arrange for response actions necessary to address the cleanup of hazardous substances. EPA officials or their designees are authorized to enter any facility, establishment, property, place, or location where entry is needed to effectuate a response action under Section 104 of CERCLA. 42 U.S.C. §§ 9604(e)(1), (e)(3)(D). If the owner of the land at issue does not provide entry, the EPA

may issue an Administrative Access Order directing compliance with the request after reasonable notice and opportunity for consultation. 42 U.S.C. § 9604(e)(5)(A). If, after an Administrative Access Order is issued, the owner of the land refuses to comply with the Order, and there is a reasonable basis to believe that there may be a release or threat of release of a hazardous substance, pollutant, or contaminant, "the court shall enjoin such interference or direct compliance with orders to prohibit interference with entry or inspection unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 9604(e)(5)(B)(i). The court may also assess civil penalties against any person who unreasonably fails to comply with Section 104(e)(3) of CERCLA or with a compliance order issued under Section 104(e)(5) of CERCLA. 42 U.S.C. § 9604(e)(5). Accordingly, this provision gives the court jurisdiction to determine the scope or duration of the injunction sought by the United States and the penalties that may be imposed, under the standard set forth therein.

At the same time, CERCLA § 113(h) explicitly prohibits challenges to ongoing CERCLA response actions. CERCLA § 113(h), 42 U.S.C. § 9613(h), was enacted to "prevent litigation that will delay the EPA's cleanup efforts" by limiting federal courts' jurisdiction over challenges to EPA activities. Juniper Dev. Grp. v. United States, 774 F. Supp. 56, 58 (D. Mass. 1990). In relevant part, Section 113(h) states:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) **to review any challenges to removal or remedial action selected under section 9604 of this title**, or to review any order issued under section 9606(a) of this title, in any action except one of the following [exceptions].[2]

---

[2] TMC does not allege that any of the exceptions identified in Section 113(h) apply to the instant case.

5

42 U.S.C. § 9613(h) (emphasis added).

Section 113(h) "divests federal courts of jurisdiction over challenges" that "concern the merits of [a] particular removal or remedial action." Reardon v. United States, 947 F.2d 1509, 1512 (1st Cir. 1991); see also United States v. Tucard, LLC, 738 F. Supp. 2d 243, 246 (D. Mass. 2010) ("[S]ection 113(h) of CERCLA bars challenges to EPA-selected removal or remedial actions before those remedies have been completed."). Other circuits have held Section 113(h) is a "blunt withdrawal of federal jurisdiction." Giovanni v. United States Dep't of Navy, 906 F.3d 94, 103 (3d Cir. 2018); see also Cannon v. Gates, 538 F.3d 1328, 1333 (10th Cir. 2008) ("According to its plain language, § 9613(h) strips federal court jurisdiction once the [g]overnment has begun a removal action."); McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325, 328 (9th Cir. 1995); N. Shore Gas Co. v. E.P.A., 930 F.2d 1239, 1244 (7th Cir. 1991).

Reading these provisions together, the court's limited jurisdiction would allow consideration of a motion to vacate the June 12 Order [#10] if TMC can show that EPA's demand for entry is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 9604(e)(5)(B). But to the extent that TMC requests relief that "interferes with the implementation of a CERCLA remedy," or seeks to "alter the method and order for cleanup," TMC's counterclaim constitutes a "challenge" to the EPA's removal, remedial actions, or related enforcement activities and is barred under Section 113(h). See Broward Gardens Tenants Ass'n v. U.S. E.P.A., 311 F.3d 1066, 1072 (11th Cir. 2002); Costner v. URS Consultants, Inc., 153 F.3d 667, 675 (8th Cir. 1998); Razore v. Tulalip Tribes of Washington, 66 F.3d 236, 239 (9th Cir. 1995).

Here, TMC asks that the court modify the order granting access to the West Street Parking Lot by shortening the length of time EPA can occupy the Property. Countercl. at 11 (paragraph 1) [#27]. If the court were to grant TMC's request for relief, the EPA would need to alter its timeline for remediation, as well as accommodate TMC's request for access.

As TMC's requested modification will "impact the remedial action selected," <u>Broward Gardens Tenants Ass'n</u>, 311 F.3d at 1072, the court is without jurisdiction to consider this claim.

B.     <u>TMC's Further Claims Do Not Present an Active Case or Controversy</u>

TMC also seeks a declaration that completion of TMC's planned construction in the West Street Parking Lot by July 16, 2018, did not and does not interfere with access to the Property; and a declaration that TMC's use of 58 parking spaces on a portion of the West Street Parking Lot is not covered by the June 12 <u>Order</u> [#10] and does not interfere with access to the Property. Even if the court had an independent statutory predicate for exercising jurisdiction over TMC's counterclaim and was not barred by CERCLA from doing so, the court would not have jurisdiction to consider TMC's counterclaim under the Declaratory Judgment Act because TMC's claims are either not ripe, or are moot.

For a court to consider a claim under the Declaratory Judgment Act, the party seeking to assert the claim must establish that it will suffer significant hardship if review is delayed, and that the issue is fit for judicial review. <u>See</u> <u>Whitman v. Am. Trucking Ass'ns</u>, 531 U.S. 457, 479 (2001). TMC's claim for declaratory relief that the "proposed completion, by 7:00 a.m. July 16, 2018, of TMC's planned construction activities at the West Street Parking Lot, did not and does not constitute 'interference' with [EPA's] access," Countercl. at 12 (paragraph 2(b)) [#27], is moot, as the stated date for the occurrence has passed (and passed prior to the TMC's filing of its <u>Counterclaim</u> [#27]).

TMC's claims for declaratory relief with respect to the work to be completed by July 16, 2018 and with respect to TMC's use of the 58 parking spaces are not ripe where TMC has not alleged that the EPA took or intends to take any action because of TMC's activities. TMC's request for declaratory relief may be predicated on a concern that the EPA may institute action against TMC in the future for TMC's interference. But "[TMC] cannot obtain judicial review until the government brings a cost recovery action." Juniper Dev. Grp., 774 F. Supp. 56, 59. And to the extent that TMC seeks damages against the United States, such a claim must first be filed in Claims Court. Because TMC's claims as to the proposed work and the 58 parking spaces "rest[] upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" these claims are not ripe for adjudication. City of Fall River, Mass. v. F.E.R.C., 507 F.3d 1, 6 (1st Cir. 2007) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

IV. Conclusion

For the foregoing reasons, Plaintiff and Defendant-in-Counterclaim's Motion to Dismiss [#40] is ALLOWED. Defendant and Plaintiff-in-Counterclaim's Counterclaim [#27] is DISMISSED.

IT IS SO ORDERED.

Date: August 13, 2019                                         /s/ Indira Talwani
                                                              United States District Judge